UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANTHONY WATSON,

          Plaintiff,          Case No. 1:22-cv-957

v.                                     Honorable Sally J. Berens

UNKNOWN REES et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 6.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.12.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Montoya and Cassel. The Court will also dismiss, for failure to state a claim, Plaintiff's due process claim against Defendant Rees and all official capacity claims. Plaintiff's claims against Defendant Rees for First Amendment retaliation and Eighth Amendment excessive force remain in the case.

## Discussion

**I.  Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

he complains occurred at that facility. Plaintiff sues Correctional Officer Unknown Rees, Correctional Officer Unknown Montoya, and Inspector Unknown Cassel, all in their individual and official capacities.

Plaintiff alleges that, on September 15, 2021, while being transported from the yard, Plaintiff's mask fell down from his face. (ECF No. 1, PageID.2; ECF No. 1-5, PageID.30.) Because Plaintiff was handcuffed, Plaintiff was unable to use his hands to replace his mask. (ECF No. 1-5, PageID.30.) After a verbal exchange with Defendant Rees about Plaintiff's inability to replace his mask—in which Plaintiff told Defendant Rees that he was not using common sense in asking Plaintiff to pull up the mask—Defendant Rees grabbed Plaintiff's right arm, pulled Plaintiff to him, and slammed Plaintiff, "face first," into the ground, striking and injuring Plaintiff's head and face. (ECF No. 1, PageID.2; ECF No. 1-1, PageID.18; ECF No. 1-4.) The documents attached to Plaintiff complaint indicate that Defendant Montoya and Correctional Officer Fracker (not a party) were present. (ECF No. 1-2, PageID.21.) Once Plaintiff was on the ground, Defendant Rees stated to Plaintiff: "I told ya I'd get [your] a** didn't I, b****?" (ECF No. 1, PageID.2–3.) Plaintiff claims that he posed no threat to Defendants prior to Defendant Rees's use of force. (ECF No. 1-5, PageID.31.)

Plaintiff alleges that Defendants Rees and Montoya submitted false Critical Incident Participation Reports detailing the incident. (ECF No. 1, PageID.6; *see* ECF No. 1-2.) Defendant Rees also issued Plaintiff a false Class I Misconduct Report for Threatening Behavior, claiming that Plaintiff had been attempting to spit on Defendant Rees, which then prompted Defendant Rees's use of force. (ECF No. 1-1, PageID.16.) However, upon review of the evidence for Class I Misconduct, the Hearing Officer found Plaintiff "not guilty" as it did not appear that Plaintiff was

in the process of attempting to spit on Defendant Rees prior to Defendant Rees's use of force. (ECF No. 1-1, PageID.19.)

Following the events of September 15, 2021, Plaintiff filed a grievance, complaining of Defendant Rees's use of force. (ECF No. 1-5.)[2] Plaintiff claims that Defendant Cassel improperly investigated Plaintiff's grievance, thus aiding in the misconduct by Defendants Rees and Montoya. (ECF No. 1, PageID.6.)

Plaintiff seeks a declaratory judgment, and compensatory and punitive damages against all Defendants. (ECF No. 1, PageID.7, 12.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

[2] It is unclear whether Plaintiff also filed grievances against the remaining Defendants.

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     First Amendment Retaliation

Plaintiff claims that Defendant Rees retaliated against Plaintiff in violation of Plaintiff's First Amendment rights when Defendant Rees slammed Plaintiff into a wall after Plaintiff told Defendant Rees that he could not pull up his mask and that Defendant Rees was not using common sense in asking Plaintiff to do so. (ECF No. 1, PageID.5–6; ECF No. 1-1, PageID.18.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Taking Plaintiff's allegations at true, the Court finds that Plaintiff has alleged sufficient facts to state a First Amendment retaliation claim against Defendant Rees.

### B. Eighth Amendment Excessive Force

Plaintiff also alleges that all three named Defendants violated Plaintiff's Eighth Amendment right to be free from excessive force. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement that, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

7

sadistically to cause harm." *Hudson*, 503 U.S. at 7. In *Hudson*, the Supreme Court held that this analysis is guided by a number of factors, including: (1) the extent of the inmate's injury; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) the threat that the officials reasonably perceived; and (5) any efforts to temper the severity of a forceful response. 503 U.S. at 7.

Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The degree of harm necessary to satisfy the objective component depends on "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Like the subjective prong, the objective prong is contextual and therefore varies depending on the claim asserted. *Hudson*, 503 U.S. at 8-9.

### 1. Defendant Rees

Plaintiff alleges that he posed no threat to Defendant Rees when Defendant Rees grabbed Plaintiff's right arm, pulled Plaintiff to him, and slammed Plaintiff, "face first," into the ground. After taking Plaintiff to the ground, Defendant Rees stated, "I told ya I'd get [your] a** didn't I, b****?" suggesting an intent to maliciously or sadistically cause harm. Plaintiff suffered pain, open wounds to his head and face, severe headaches, and blurred vision as a result of Defendant Rees's use of force. These allegations, taken as true and viewed in the context of the *Hudson* factors, sufficiently state an Eighth Amendment claim against Defendant Rees.

### 2. Defendant Montoya

Plaintiff does not claim that Defendant Montoya played a direct role in the use of excessive force by Defendant Rees. Plaintiff instead complains that Defendant Montoya falsified a report in an effort to "continu[e]" and "encourage" the misconduct by Defendant Rees. (ECF No. 1, PageID.6.) As explained below, this does not state an Eighth Amendment claim.

As a general matter, an officer's mere presence during an altercation, without some showing of direct responsibility, cannot give rise to constitutional liability. *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013). However, an officer is liable for another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Id.* (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *accord Alexander v. Carter ex. rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018). Here, Plaintiff's description of Defendant Rees's use of force in grabbing Plaintiff's arm without warning and slamming Plaintiff to the ground does not plausibly suggest that Defendant Montoya had any reason to anticipate the takedown or that Defendant Montoya would have had the opportunity to intervene to prevent the force from occurring.

Likewise, Plaintiff's allegation that Defendant Montoya falsified his report to cover up for Defendant Rees does not state a claim of excessive force. A plaintiff cannot establish the individual liability of any defendant for constitutional violations absent allegations showing that each defendant was personally involved in the conduct which forms the basis of his claims. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Defendant Montoya's actions in falsifying a report after the fact, even if true, could not have caused or led to the use of excessive force in violation of Plaintiff's Eighth Amendment rights; the force had already occurred. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment excessive force claim against Defendant Montoya.

### 3. Defendant Cassel

There is no allegation that Defendant Cassel was present for Defendant Rees's use of force against Plaintiff on September 15, 2021. Instead, Plaintiff alleges that Defendant Cassel participated in the violation of Plaintiff's Eighth Amendment rights by improperly investigating the alleged misconduct and "embellishing his report to favor Defendants Rees & Montoya's reports." (ECF No. 1, PageID.6.) These allegations, even if true, also do not state an Eighth Amendment claim.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

10

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). After-the-fact approval of a subordinate's course of action, which does not itself cause or continue the harm alleged, is insufficient to establish a claim for supervisory liability. *Burgess*, 735 F.3d at 479.

Here, although Plaintiff alleges that Defendant Cassel improperly investigated Plaintiff's grievance against Defendant Rees, there is no allegation that Defendant Cassel caused any incident of excessive force against Plaintiff. In keeping with well-established precedent, Plaintiff cannot state an Eighth Amendment claim against Defendant Cassel.

    **C.**    **Fourteenth Amendment Claims**

Plaintiff suggests that Defendants Rees and Montoya violated Plaintiff's Fourteenth Amendment due process rights by falsifying documents to cover up Defendant Rees's use of excessive force. Plaintiff also claims that Defendant Cassel violated Plaintiff's Fourteenth Amendment rights by improperly investigating Plaintiff's grievance against Defendant Rees.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of*

*Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citation omitted). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

### 1. Defendants Rees and Montoya

Plaintiff's Fourteenth Amendment claims against Defendants Rees and Montoya are premised on their filing of false reports against Plaintiff. However, the erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98-5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."); *Jones v. McKinney*, No. 97-6424, 1998 WL 940242, at *1 (6th Cir. Dec. 23, 1998) ("McKinney did not violate Jones's constitutional rights, even if the disciplinary report was false, because a prisoner has no constitutionally protected immunity from being wrongly accused.").

"A constitutional violation may occur if, as a result of an accusation, the Plaintiff was deprived a protected liberty interest without due process." *Reeves v. Mohr*, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). However, the Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. at 484. According to that Court, a prisoner is entitled to the protections of due process

only when the sanction "will inevitably affect the duration of his sentence," or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

As noted above, Plaintiff was charged with a Class I Misconduct as a result of the false statements contained in the reports issued by Defendants Rees and Montoya. He was placed in segregation pending a hearing on September 15, 2021, but was ultimately found not guilty of the charge of Threatening Behavior on September 22, 2021. Plaintiff's allegations, taken as true, do not state a due process claim. Given that Plaintiff was ultimately found not guilty, Plaintiff has not alleged any deprivation that could affect the duration of his sentence.

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." The documents attached to Plaintiff's complaint indicate that Plaintiff was placed in segregation pending the hearing on Plaintiff's Class I Misconduct. (ECF No. 1-1, PageID.16.) Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 793-94 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868

13

(finding that 61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (finding that two years of segregation while the inmate was investigated for the murder of a prison guard in a riot did not implicate a liberty interest); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (finding that one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (finding that 13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (concluding that eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Plaintiff's confinement in segregation from September 15, 2021, until after the result of the September 22, 2021, hearing falls far short of the periods of time for which courts have concluded due process protections are required. The Court will dismiss Plaintiff's due process claims against Defendants Rees and Montoya.

    **2.**    **Defendant Cassel**

Plaintiff appears to claim that, as a result of the actions of Defendant Cassel, Plaintiff was deprived of an effective grievance process. However, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th

Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Cassel's conduct did not deprive him of due process in violation of the Fourteenth Amendment.

### D. Official Capacity Claims

Finally, Plaintiff brings claims against each Defendant in both their individual and official capacities. For the reasons set forth below, the Court will dismiss all "official capacity" claims.

Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690, n.55). An official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66. Accordingly, claims against each Defendant employed by the MDOC, (ECF No. 1, PageID.1–2, 10), are treated as claims against the MDOC itself.

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not

15

expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Sovereign immunity extends not only to the State itself, but also to "state instrumentalities," which includes the MDOC. *McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. 2010) (citing *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Turnboe v. Stegall*, 234 F.3d 1270 (6th Cir. 2000)). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy*, 369 F. App'x at 653–54.

Here, Plaintiff seeks monetary damages, as well as a declaratory judgment, declaring that "the acts [and] omissions described [in the complaint] violate[d] [Plaintiff's] rights." (ECF No. 1, PageID.7.) An official capacity defendant is absolutely immune from monetary damages. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Plaintiff also does not request injunctive or declaratory relief that is prospective in nature, such that relief against an official capacity defendant would be available pursuant to *Ex parte Young*, 209 U.S. 123, 159–60 (1908). Therefore, Plaintiff's official capacity claims are properly dismissed on grounds of immunity.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendants Montoya and Cassel will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's due process claim against

Defendant Rees and all official capacity claims. Plaintiff's claims against Defendant Rees for First Amendment retaliation and Eighth Amendment excessive force remain in the case.

An order consistent with this opinion will be entered.


Dated: November 16, 2022                     /s/ Sally J. Berens
                                             SALLY J. BERENS
                                             U.S. Magistrate Judge